# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2018

No. 17-30769

Lyle W. Cayce
Clerk

PAN AMERICAN LIFE INSURANCE COMPANY, individually and as a partner in Panacon,

> Plaintiff – Appellant,

v.

LOUISIANA ACQUISITIONS CORP.; INTER-CONTINENTAL HOTELS CORPORATION,

> Defendants – Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CV-5027

Before REAVLEY, ELROD, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Pan American Life Insurance Company (Pan Am)[1] and Louisiana Acquisition Corporation (LAC) formed a partnership to build and operate a luxury New Orleans hotel. The two partners developed bad blood while contemplating the breakup of the partnership and the sale of the hotel, which

---

\* Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

[1] The parties' briefs and the record refer to Pan Am as "PALIC."

No. 17-30769

led to this protracted lawsuit. Pan Am appeals from the district court's grants of summary judgment in LAC's favor, first partially in 2016 and again in 2017. We AFFIRM.

I.

Pan Am and LAC formed a partnership called PANACON in 1981 to build and operate a hotel in downtown New Orleans. Pan Am is a multibillion-dollar insurance company that, until 2005, invested in real estate and hospitality assets. LAC is a wholly owned subsidiary of Inter-Continental Hotels Corporations (IHC), and these two companies operated as a commonly controlled business entity. Pan Am owned a two-thirds interest in PANACON, and LAC the remaining one-third. The Partnership Agreement contained a non-compete provision stating that "no Partner shall, directly or indirectly, acquire, own or hold an interest in a hotel in the New Orleans Metropolitan Area which is competitive with the [h]otel without the prior written consent of the other Partners." PANACON entered into an Operating and Management Agreement with IHC to operate the hotel, which IHC assigned to LAC. In 2005, Pan Am, as part of an effort to divest non-insurance assets from its portfolio, decided to sell the hotel. Although Pan Am's plans stalled because of Hurricane Katrina and the 2008 recession, the parties resumed deliberating in 2010.

Pan Am and LAC disagreed on how to proceed with the sale. Three letters—dated April 26, 2011, April 27, 2011, and May 10, 2011—reveal two points of disagreement: a new long-term management contract and renovation. First, LAC and IHC wanted the hotel to remain under the "Inter-Continental" brand and "insist[ed] upon a new long-term management contract for the hotel [from a potential buyer] as a condition for agreeing to sell LAC's interest in the hotel." Pan Am believed that the hotel should be unbranded and unencumbered by any management contract to maximize the

2

hotel's value.  Second, Pan Am wanted the partnership to invest $6 million toward "soft renovation" to maximize the hotel's value.  LAC considered soft renovation to be imprudent in light of the coming sale.  When LAC refused to begin renovation, Pan Am issued a notice of default.  LAC ultimately agreed to the sale and to simply seek a franchise agreement from the purchaser, and Pan Am withdrew its notice of default.

During this period, Pan Am and LAC had an additional conflict.  In April 2012, Pan Am contended that LAC had been overcharging the partnership for 13 years.  LAC responded with a summary of intercompany charges from the first quarter of 2012.  Based on that summary, Pan Am extrapolated that LAC had overcharged PANACON approximately $2 million, which LAC disputed.  LAC conducted an internal review of the disputed charges for three months and kept Pan Am apprised of its progress.  On December 20, 2012, LAC informed Pan Am that LAC owed the partnership $651,804 ($434,536 for Pan Am).  LAC offered to show Pan Am the documents from internal review, but Pan Am declined to see them.

On December 21, 2012, Pan Am and LAC signed a Side Letter Agreement and approved the sale.  The Side Letter Agreement also reflected LAC's agreement to pay PALIC $434,636 "in resolution of outstanding disputes" and for "claims related to the Management Agreement . . . including without limitation those related to (a) matters referenced in [the three] letters . . . , and (b) the categories of intercompany charges" discussed above. The partnership sold the hotel for $60 million in January 2013.

Following the sale, Pan Am sued LAC and IHC on July 9, 2013 for, among others, breach of the Partnership Agreement, breach of fiduciary duty, fraud, conversion, and unfair trade practices.  LAC moved to dismiss, contending that the Side Letter Agreement contains a release of claims.  The district court denied the motion to dismiss on the grounds that although "it

No. 17-30769

[was] clear that [Pan Am] compromised something," discovery was necessary as Pan Am alleged fraud in the inducement.  On August 2, 2016, the district court granted partial summary judgment in LAC's favor, holding that LAC did not breach the non-compete provision.  After additional discovery, on August 21, 2017, the district court granted summary judgment on all remaining claims in LAC's favor after determining that the Side Letter Agreement contains a compromise that bars Pan Am's claims.

## II.

We review a grant of summary judgment *de novo.  United States v. Nature's Way Marine, L.L.C.*, 904 F.3d 416, 419 (5th Cir. 2018).  "Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Id.* (quoting Fed. R. Civ. P. 56(a)).

## III.

## A.

We hold that the Side Letter Agreement bars Pan Am's claims against LAC.  Under Louisiana law, "[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code art. 3071.  "A compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised." *Id.* art. 3080

The Side Letter Agreement clearly and unambiguously contains a compromise.  Paragraph 6 of the Side Letter Agreement states:

4

> The termination of the Existing Management Agreement would be subject to the resolution of any disputes between PALIC and LAC (and its affiliates), and a release of LAC and its affiliates pursuant to a voluntary termination agreement.  PALIC and LAC agree that LAC will pay PALIC the amount of $434,636 on or prior to sale of the [h]otel in resolution of outstanding disputes and such release of LAC and its affiliates will be for claims related to the Management Agreement and operation of the [h]otel, including without limitations those related to (a) matters referenced in letters from PALIC to LAC and its Affiliate dated April 26, 2011, April 27, 2011, and May 10, 2011, and (b) the categories of intercompany charges listed in a spreadsheet provided by PALIC to LAC on December 19, 2012, and such release shall specifically exclude any fraud by LAC and its affiliates, provided that such exclusion for fraud will not apply to claims based upon the intercompany charges referred to in (b) above.  * * *

In no uncertain terms, LAC agreed to pay Pan Am $434,636 "in resolution of outstanding disputes."  Pan Am agreed to release its "claims related to the Management Agreement and operation of the [h]otel," which covers the entirety of Pan Am and LAC's relationship.

We reject Pan Am's futile contention that the Side Letter Agreement does not contain a compromise.  In Pan Am's view, the Side Letter Agreement merely reflects the parties' intent to enter into a separate agreement called the "voluntary termination agreement" that contains a compromise *in the future*, but, Pan Am asserts, the Side Letter Agreement does not contain a compromise in itself.  Because it was not a party to the Voluntary Termination Agreement, Pan Am asserts that it compromised and released nothing.  To support this contention, Pan Am heavily relies on the district court's order denying LAC's motion to dismiss, which stated that the overall impression of reading the Side Letter Agreement was that the parties agreed to enter into a future agreement.

Pan Am's contention is unavailing because the Voluntary Termination Agreement was between PANACON and LAC, and this agreement bars the partnership—a separate legal entity—from asserting its own legal claims

against LAC, and *vice versa.* Therefore, the Voluntary Termination Agreement affects neither the relationship between Pan Am and LAC's relationship nor the existence of the compromise in the Side Letter Agreement.[2] If Pan Am is correct, it cannot explain why LAC would pay Pan Am $434,636—if not to resolve the outstanding disputes, as the Side Letter Agreement states.

Pan Am's reliance on the district court's order denying LAC's motion to dismiss as a silver bullet is misplaced. We are reviewing the district court's summary judgment orders, not its Rule 12(b)(6) order. At this juncture, it matters little what the district court had said at the motion-to-dismiss stage. Moreover, Pan Am's brief cherry-picks favorable quotes from the district court's denial of the dismissal motion—"The overall impression . . . is that it commits the parties to do certain things at some point in the future"—to support the contention that the Side Letter Agreement does not contain a compromise, while omitting those that are fatal to its argument—"On the other hand, [Pan Am] did receive the $434,636 . . . so it is clear that [it] compromised something." The district court, in its second summary judgment order, rebuked Pan Am's counsel for mischaracterizing the court's order. During oral argument before us, Pan Am's counsel was similarly less than candid with his characterization of the district court's order.[3] We are unpersuaded and hold that the Side Letter Agreement unambiguously contains a compromise.

---

[2] Reference to the Voluntary Termination Agreement hurts Pan Am's contention more than it helps. The termination of the existing Management Agreement first required not only a release between PANACON and LAC, but also "resolution of any disputes between PALIC and LAC." Because Pan Am accepts that the Voluntary Termination Agreement exists, it must also accept that a condition precedent (*i.e.*, the resolution of Pan Am and LAC's disputes) has occurred.

[3] In one instance, Pan Am's counsel attempted to improperly submit to us a one-page exhibit *during* oral argument without first showing it to LAC's counsel. Oral Argument 2:07–2:38, 38:24–39:10, *Pan Am. Life Ins. Co. v. La. Acquisitions Corp.* (No. 17-30769). The exhibit contained a lengthy quote from the district court's order denying LAC's motion to dismiss, while omitting the unfavorable portion with an ellipsis.

The Side Letter Agreement has a broad and sweeping reach. *See* La. Civ. Code art. 3071 ("A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express."). Pan Am and LAC agreed to resolve outstanding disputes and to release any potential claims arising out of the management and operation of the hotel. The Side Letter Agreement specifically explains that such claims "includ[e] without limitations" those related to (a) the parties' disagreement over renovation and long-term management contract, as referenced in Pan Am's three letters; and (b) the parties' dispute over the propriety and amount of intercompany charges. Apart from a narrow exception for potential fraud unrelated to intercompany charges, the Side Letter Agreement bars all potential claims.

The implication of this broad language is clear as well: All of the claims that Pan Am has appealed are barred. As the district court persuasively summarized in its second summary judgment order:

> Paragraph 6 is broadly worded to encompass all claims related to the Management Agreement and the operation of the [h]otel regardless of the legal theory relied upon. Moreover, consideration was paid to resolve the parties' "outstanding" disputes; every claim asserted in this lawsuit was "outstanding" when PALIC executed the [Side Letter Agreement]. Therefore, regardless of the legal theory being used (breach of fiduciary duty, conversion, or [unfair trade practices]), all of PALIC's claims are foreclosed by the compromise memorialized in Paragraph 6 of the [Side Letter Agreement].

We likewise conclude that the Side Letter Agreement bars breach-of-fiduciary-duty, conversion, and unfair-trade-practices claims.

As to Pan Am's claims of fraud and breach of the Partnership Agreement, although the district court resolved them in LAC's favor for other reasons, we hold that the broad language of the Side Letter Agreement bars them as well. Pan Am's fraud claim stems from LAC's reluctance to renovate the hotel. The

district court ultimately determined that Louisiana's two-year prescription statute bars such a claim because Pan Am—as the author of the notice of default for LAC's failure to begin renovation—knew about any alleged fraud, if any, as early as April 2011 but filed its complaint in July 2013. In addition to this time bar, Pan Am's fraud claim is barred because, notwithstanding the general exception for fraud unrelated to intercompany charges, the Side Letter Agreement specifically mentions Pan Am's notice of default as one of the disputes that the parties agreed to resolve.

Pan Am's breach-of-Partnership-Agreement claim is similarly barred. The breach claim stems from LAC's alleged, indirect ownership of competing hotels that were owned by LAC's parent-company, IHC, in violation of the non-compete clause in the Partnership Agreement. The district court resolved this claim in LAC's favor because Pan Am (1) failed to provide any legal support for the proposition that a subsidiary can indirectly hold an interest through its parent[4] and (2) consented to IHC's merger, and LAC's affiliation, with the competing hotels.[5] In addition to these reasons, we hold that the Side Letter Agreement bars this claim, because it broadly covers all claims relating to the operation of the hotel, including any violations of the non-compete provision.

Because the Side Letter Agreement contains a compromise that bars Pan Am's claims, the district court properly granted summary judgments in LAC's favor. Because Pan Am's claims against IHC depend on the viability of its claims against LAC, the district court properly granted summary judgment in IHC's favor as well.

---

[4] Pan Am's failure to offer controlling Louisiana authority implicates the *Erie* doctrine. As a federal court sitting in diversity jurisdiction, we are not free to expand Louisiana's substantive law as we see fit. *See Gulf & Miss. River Transp. Co., Ltd. v. BP Oil Pipeline Co.*, 730 F.3d 484, 488 (5th Cir. 2013).

[5] Pan Am's brief makes no mention of the clear evidence in the record that Pan Am consented to IHC's merger and LAC's affiliation with other New Orleans hotels.

No. 17-30769

B.

Pan Am next contends that the Side Letter Agreement is vitiated by fraud. Namely, it asserts that LAC misrepresented the actual amount of intercompany charges—allegedly over $2 million—and fraudulently induced Pan Am into signing the Side Letter Agreement. We disagree.

"Consent may be vitiated by error, fraud, or duress." La. Civ. Code. Ann. art. 1948. "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss of inconvenience to the other. Fraud may also result from silence or inaction." *Id.* art. 1953. Fraud, however, "does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill." *Id.* art. 1954. We see no genuine issue of material fact as to whether LAC fraudulently induced PALIC into signing the Side Letter Agreement. Nothing in the record suggests that LAC "misrepresent[ed]" or "suppress[ed]" the amount of intercompany charges. La. Civ. Code. Ann. art. 1953. After Pan Am raised its concern that LAC had been overcharging the partnership, LAC conducted a thorough and transparent review of the charges for three months. LAC updated Pan Am on the progress of the review, presented its determination that it owed Pan Am $434,636, and offered to show its supporting documentation.

Even if LAC had misrepresented the amount of intercompany charges, Pan Am's fraudulent-inducement argument fails because it "could have ascertained the truth without difficulty, inconvenience, or special skill." La. Civ. Code Ann. art. 1954. Pan Am could have ascertained the true amount on its own without much difficulty as it was the first to raise its concern that LAC has overcharged the partnership for over $2 million. When LAC presented its conclusion that it owed $434,636, Pan Am also could have ascertained the true amount by reviewing LAC's documents. But it declined to do so. Although Pan

No. 17-30769

Am contends that the review of the documents would have been difficult as LAC's own internal review took three months, it did not even bother to examine the most accessible data. We reject Pan Am's fraudulent-inducement argument.

## IV.

For the foregoing reasons, we AFFIRM.